```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
ROBERT C. KAUFHOLD and JOSEPH ARTHUR      :
MCGUCKIN,                                 :
                          Plaintiffs,     :     10 Civ. 4588 (DLC)
                                          :
             -v-                          :     OPINION AND ORDER
                                          :
CYCLOPIAN MUSIC, INC. and GERALD          :
CAIAFA,                                   :
                          Defendants.     :
                                          :
-----------------------------------------X
```

For the plaintiffs:
Richard M. Garbarini
Sarah Hasan
Garbarini Law Group P.C.
501 Fifth Avenue, Suite 1708
New York, NY 10017

For the defendants:
Eric A. Prager
K&L Gates LLP
599 Lexington Avenue
New York, NY 10022
-and-
Curtis B. Krasik
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222

DENISE COTE, District Judge:

The plaintiffs Robert Kaufhold ("Kaufhold") and Joseph McGuckin ("McGuckin"), two former members of the music band the "Misfits," bring this suit against Cyclopian Music, Inc. ("Cyclopian") and Gerald Caiafa ("Caiafa"), a current member of the band, for a declaratory judgment that the plaintiffs co-own

the Misfits trademarks and other relief.  The defendants moved to dismiss the complaint on several grounds, including lack of personal jurisdiction.  For the following reasons, the motion is granted.

## BACKGROUND

A.   The Misfits

Except where noted, the following facts are taken from the plaintiffs' amended complaint and are assumed to be true for purposes of this motion.  The Misfits is a punk rock band that was formed in the late 1970s.  At all relevant times, the Misfits consisted of four performers: a vocalist, a guitarist, a bass player, and a drummer.  McGuckin was the band's drummer from 1979 to 1982 and was the band's longest-serving drummer.  Kaufhold was the band's guitarist from 1978 to 1980.  The band developed its unique performance style during the time period that the plaintiffs were in the band.  The plaintiffs contributed their talents, money, time, and resources to develop the band's image and brand while they were members.  Specifically, the band used logos and stylized versions of the name "Misfits" to identify itself (the "Misfits Marks").  During the time that he was in the band, McGuckin designed flyers used to promote the band's shows and printed t-shirts that were sold at the band's concerts.

After the plaintiffs ceased performing with the band, sales from recordings on which the plaintiffs performed continued to generate royalties, which the plaintiffs collected until recently. Additionally, two events generated new interest in the band in recent years. In 1996, a box set containing the majority of the Misfits' early catalog was released. Two tribute albums of Misfits songs played by other bands were released in 1997 and 2000.

The Misfits exists as a band today. Caiafa, who also was a member during the time that the plaintiffs were in the band, is a member of the present-day Misfits. The band tours using the Misfits name and performs songs from the early catalog and new music that the band has released periodically since 1997.

B.   The Misfits Marks

In 1992, Caiafa and other former members of the band, not including the plaintiffs (the "1992 Plaintiffs"), sued another former member, Glenn Anzalone ("Anzalone"),[1] doing business as Plan 9 Records, and an entity called Caroline Records, Inc. The outcome of that case was a 1994 settlement agreement (the "1994 Agreement").[2] Pursuant to the 1994 Agreement, the parties to the

---

[1] Anzalone is also referred to as Glenn Danzig or simply "Danzig."

[2] A court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known

agreement agreed on the sale of certain master recordings to Caroline Records and the division of royalty payments arising from those master recordings.  Additionally, the 1994 Agreement states:

> The parties shall be co-owners of the name and trademarks of the Misfits and all logo(s) and artwork . . . previously associated therewith. . . .  The Plaintiffs and Danzig shall each have the non-exclusive right to conduct merchandising and to exploit other rights relating to the use and exploitation of the name "Misfits" and accompanying logos and artwork except that neither party shall use the names, likenesses and visual representations of the members of the other party without written consent. . . .  The plaintiffs and Danzig will each retain 100% of what each earns from the exploitation of merchandising rights and neither the plaintiffs nor Danzig has any obligation to account to the other for any revenues derived from the exploitation of merchandising or any other rights.

The plaintiffs in this action allege that Caiafa told them about the 1994 Agreement and told them that they, too, co-owned the Misfits Marks.  According to the plaintiffs, Caiafa told them that no member would apply for the exclusive rights to use the Misfits Marks.  The plaintiffs do not allege when or where Caiafa told them this information.  They do assert, however,

---

to the plaintiff and upon which it relied in bringing the suit" on a motion to dismiss.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  The plaintiffs refer to the 1994 Agreement in the complaint.  The defendants attached it to their opposition, and it is considered here.

that as a result of Caiafa's representations they believed that he would not seek to unilaterally gain exclusive control over the Misfits Marks.

Since approximately October 2000, Caiafa and Cyclopian, a corporation that Caiafa owns, have filed five applications with the United States Patent and Trademark Office (the "PTO") to register the Misfits Marks.  Three of those applications have matured into trademark registrations.  When the defendants applied for the registrations, Caiafa represented that Cyclopian owned the Misfits Marks and that to the best of his knowledge and belief no other person had the right to use the marks in commerce.

In the six years prior to the plaintiffs' filing of the instant action, the defendants have sold merchandise including t-shirts, jewelry, posters, stickers, and skateboards using the Misfits Marks.  They sell merchandise through their website and through licensing agreements.  The plaintiffs were not aware that the defendants were selling merchandise using the Misfits Marks or of the defendants' trademark applications.

In August 2009, McGuckin saw a billboard in New York City advertising a brand of shoes using one or more of the Misfits Marks.  After McGuckin obtained counsel, the plaintiffs learned about the defendants' trademark applications.  They filed this lawsuit on June 11, 2010.  The defendants filed a motion to

5

dismiss the complaint on September 20.  The Court advised the plaintiffs that if they filed an amended complaint instead of opposing the motion, it would be their final opportunity to amend the pleading.

The plaintiffs filed an amended complaint on October 15. In the amended complaint, they assert three causes of action: (1) cancellation of the defendants' trademark registrations pursuant to 15 U.S.C. § 1119 as having been fraudulently obtained; (2) declaratory judgments that the plaintiffs co-own the Misfits Marks and the associated goodwill, that the defendants' trademark applications are based on Caiafa's fraudulent claims to the PTO, and that by filing the applications, Caiafa repudiated the 1994 Agreement and is therefore subject to an accounting to all former members of the band; and (3) for an accounting.  The defendants renewed their motion to dismiss on October 29 and the motion was fully briefed on November 19.  The defendants argue that the Court lacks personal jurisdiction over the defendants, that the plaintiffs have failed to state a claim, and that the plaintiffs' claims are barred by laches.

## DISCUSSION

A.   Personal Jurisdiction

The plaintiffs contend that there is both general and specific personal jurisdiction over the defendants.  "In order

to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Penguin Grp. (USA) Inc. v. American Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010) (citation omitted). Where, as here, there has been no discovery, the plaintiff need only make "legally sufficient allegations of jurisdiction" through its pleading and affidavits in order to survive a motion to dismiss. Id. at 35 (citation omitted).

"A federal court's jurisdiction over non-resident defendants is governed by the law of the state in which the court sits -- including that state's long-arm statute -- to the extent this law comports with the requirements of due process." Arar v. Ashcroft, 532 F.3d 157, 173 (2d Cir. 2008), vacated and superseded on other grounds by 585 F.3d 559 (2d Cir. 2009). Under New York law, "a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state" "not occasionally or casually, but with a fair measure of permanence and continuity." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (citation omitted). The following factors are used to assess general personal jurisdiction: "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." Landoil Res. Corp. v.

7

Alexander & Alexander Servs., 918 F.2d 1039, 1043 (2d Cir. 1990).  See also Am. Transit Ins. Co. v. Hoque, 846 N.Y.S.2d 91, 91 (App. Div. 1st Dep't 2007).  Solicitation of business alone is insufficient to find general jurisdiction.  Landoil, 918 F.3d at 1043.

The plaintiffs have not made a prima facie showing that the Court has general personal jurisdiction over the defendants.  They allege the following non-conclusory jurisdictional facts.  Caiafa resides in New Jersey.  Cyclopian is a New Jersey corporation with its principal place of business in New Jersey.  The defendants have sold a "substantial amount" of merchandise bearing the Misfits Marks via their website to customers in New York.  Additionally, they have licensed the Misfits Marks to New York corporations and to national corporations that sell products in New York.  Advertising bearing the Misfits Marks -- for example, the billboard for sneakers spotted by McGuckin in 2009 -- has been directed at the New York market.  Finally, although not alleged by the plaintiffs in their amended complaint, the defendants admit that the Misfits have played live concerts on tours "throughout the United States."

The plaintiffs have not alleged that the defendants maintain an office, solicit business, keep bank accounts, own property, or have employees or agents in New York.  Even if the plaintiffs' allegation that the defendants have licensed the

8

Misfits Marks to New York corporations is interpreted as a solicitation of business in New York, that allegation alone is an insufficient basis for general personal jurisdiction.  None of the other jurisdictional allegations support exercising general personal jurisdiction over the defendants.

If a party is not subject to a court's general jurisdiction, it may still be subject to the court's long-arm jurisdiction on certain claims.  New York's long-arm statute provides:

> As to a cause of action <u>arising from</u> any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . , who in person or through an agent:
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> . . . .
> 3. commits a tortious act without the state causing injury to person or property within the state, . . . if he
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y. C.P.L.R. § 302(a) (emphasis supplied).  If the New York long-arm statute permits personal jurisdiction, a court must still determine whether exercising personal jurisdiction over a defendant comports with the Due Process Clause of the United

9

States Constitution.  Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).

In order to satisfy the "arising from" requirement, there must be "some articulable nexus between the business transacted and the cause of action sued upon." Id. at 166 (citation omitted).  The plaintiff's claim must have a "substantial" rather than a "tangential" relationship with the defendants' contacts with New York.  Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103-04 (2d Cir. 2006).  Additionally, "a plaintiff must establish the court's jurisdiction with respect to each claim asserted." Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004).

The plaintiffs have failed to make a prima facie showing of specific personal jurisdiction over the defendants with respect to their first and second causes of action because the plaintiffs' claims do not arise from the defendants' contacts with New York.[3]  The plaintiffs' first cause of action seeks to have the defendants' trademark registrations canceled on the

---

[3] Because the plaintiffs' first two claims do not arise from the defendants' contacts with the New York, it is unnecessary to decide whether each of the asserted activities constitutes "transacting business" in New York or whether the defendants' activities are described by either prong of N.Y. C.P.L.R. § 302(a)(3).  Nonetheless, New York courts have found that selling merchandise through a website to New York residents is a transaction of business that may be sufficient to provide specific personal jurisdiction.  See, e.g., Chloé, 616 F.3d at 166; Vandermark v. Jotomo Corp., 839 N.Y.S.2d 670, 671 (App. Div. 4th Dep't 2007).

ground that Caiafa made fraudulent representations to the PTO. The claim does not relate to the defendants' sale of merchandise using the Misfits Marks. Whether Caifa misrepresented his ownership to the PTO does not have any substantial relationship to those sales.

The second cause of action for a declaratory judgment also does not arise from the defendants' contacts with New York. The plaintiffs explicitly disclaim any intent to sue for infringement. As a result, the defendants' commercial activities in New York are essentially irrelevant. Like the first claim, the second claim essentially attacks the PTO filings, seeking a declaration that Caiafa defrauded the PTO and that Caiafa's actions before the PTO do not affect the plaintiffs' rights in the Misfits Marks.

None of the plaintiffs' arguments in favor of finding personal jurisdiction are persuasive. First, the plaintiffs heavily rely on trademark infringement cases to support their arguments in favor of long-arm jurisdiction, but, as noted, they admit that this is not a trademark infringement case. Therefore, cases such as Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, in which the plaintiff's cause of action for infringement arose from the sale of counterfeit handbags, are distinguishable from the plaintiffs' claims.

Finally, the plaintiffs request that the Court grant them jurisdictional discovery instead of granting the motion. But, the plaintiffs have not described any facts that they would like to develop through discovery that would alter the status of their claims against the defendants. Because the absence of personal jurisdiction arises from the nature of the plaintiffs' first two causes of action, the request is denied.

B.  Accounting

Assuming without deciding that the plaintiffs have made a prima facie showing of personal jurisdiction over the defendants with respect to their third cause of action,[4] the cause of action for an accounting must nonetheless be dismissed for failure to state a claim. The amended complaint does not identify any statutory basis for this claim. The plaintiffs argue, however, that they are entitled to an accounting pursuant to 15 U.S.C. § 1117(a), which entitles a plaintiff to the defendant's profits or the plaintiff's damages

> [w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established

---

[4] When a plaintiff seeks an accounting that is not tethered to any substantive count, it may be the case that personal jurisdiction arises only in the jurisdiction in which the defendant resides or has its principal place of business. In this case, that would be New Jersey.

12

>     in any civil action arising under this
>     chapter.

15 U.S.C. § 1117.  Section 1125 prohibits false designation of origin, false descriptions, trademark dilution, and cyberpiracy. 15 U.S.C. § 1125.  The plaintiffs have not brought any claim under § 1125.  As a result, they have failed to state a claim for an accounting pursuant to § 1117, which provides a remedy for the underlying violation.

While the plaintiffs have not identified any other theory to support their claim for an accounting, an accounting may be a separate cause of action under New York law.  <u>DiTolla v. Doral Dental IPA</u>, 469 F.3d 271, 275 (2d Cir. 2006).  But, "[t]he right to an accounting rests on the existence of a trust or fiduciary relationship regarding the subject matter of the controversy at issue."  <u>Akkaya v. Prime Time Transp., Inc.</u>, 845 N.Y.S.2d 827, 828 (App. Div. 2d Dep't 2007).  The plaintiffs have not alleged the existence of any special relationship between the plaintiffs and the defendants that would support the claim for an accounting.  Consequently, the third cause of action must be dismissed as well.

## CONCLUSION

The defendants' October 29 motion to dismiss is granted. The claim for an accounting is dismissed.  Because the Court lacks personal jurisdiction over the defendants with respect to

the plaintiffs' first two causes of action, it is unnecessary to reach the remainder of the grounds for the defendants' motion. The Clerk of Court shall dismiss the action.

SO ORDERED:

Dated:  New York, New York
        December 14, 2010

                                    _____
                                           DENISE COTE
                                    United States District Judge